UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THE CINCINNATI INSURANCE
COMPANY,

                Plaintiff,                        Case No. 12-13185
                                                  Honorable Thomas L. Ludington

v.

BECKER ULMAN CONSTRUCTION, INC.,
and WOLVERINE INSULATION, LLC,

                Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS IN LIMINE**

Hal and Jacquie Katterman's home incurred significant fire damage on April 30, 2012. They believe the fire was caused by a woodstove, along with insulation materials, that were not properly installed and were not properly inspected. The woodstove was installed by Becker Ulman Construction Company during home renovations from 2007 to 2008. During the same period, Wolverine Insulation, LLC installed insulation near the stove at Becker's direction.

The Cincinnati Insurance Company provides insurance coverage for the Kattermans' residential property. As a result of the fire, and pursuant to the parties' insurance agreement, Cincinnati "has paid to or on behalf of the Kattermans an amount in excess of $1,100,000.00 for their losses[.]" Pl.'s Compl. ¶ 19, ECF No. 1. Thus, Cincinnati is "subrogated to the rights of the Kattermans to the extent of such payments," *id*., and on July 20, 2012, it filed a complaint against Becker and Wolverine alleging claims for negligence and breach of contract.

Trial is set to commence on November 12, 2013. On October 1, 2013, Cincinnati filed six motions in limine to preclude the admission of various categories of evidence. Each is addressed below.

**I**

Under the Federal Rules of Evidence, relevant evidence is admissible at trial unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. Irrelevant evidence is not admissible. *Id*. Evidence is "relevant" if it tends to make a material fact more or less probable. Fed. R. Evid. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for the exclusion of evidence before trial, "[i]n general, federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion in limine is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial." *Corporate Commc'n Servs. of Dayton, LLC v. MCI Commc'n Servs., Inc.*, No. 3:08-CV-046, 2010 WL 1445169, at *1 (S.D. Ohio Apr. 12, 2010).

**II**

**A**

Cincinnati's first motion in limine seeks to "prelude defendants, their witnesses, and their counsel from making any mention of or reference to materials burned in the wood stove." Pl.'s First Mot. 2, ECF No. 25. Specifically, Cincinnati indicates that Becker and Wolverine "have made references throughout the litigation of this case that the materials the Katterman's [sic] burned in the wood stove may have caused the subject fire." *Id*. at 6. According to Cincinnati, however, "all of the experts in this case for both plaintiff and defendants have determined that

whatever materials were burned in the wood stove had nothing to do with the cause of the fire." *Id.*

On October 24, 2013, Wolverine filed a response to this motion in limine. However, Local Rule 7.1 clearly indicates that a response to a nondispositive motion "must be filed within 14 days after service of the motion." E.D. Mich. LR 7.1(e)(2)(B). Wolverine's response comes almost ten days late. This untimely response will be stricken, and Cincinnati's motion will be granted. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ("When a party responds to a motion to exclude evidence, the party must not only make an offer of proof to preserve the issue for appeal, but must also indicate why the evidence is admissible.").

At trial, Wolverine and Becker will be foreclosed from making any mention of the materials burned in the Kattermans' woodstove.

**B**

Cincinnati's second motion in limine seeks to "preclude defendants, their witnesses, and their counsel from making any mention of or reference to the catalytic converter in the wood stove." Pl.'s Second Mot. 2, ECF No. 26. According to Cincinnati, Becker and Wolverine "have made references throughout the litigation of this case that the catalytic converter in the Katterman's [sic] wood stove may have somehow caused the subject fire." *Id.* at 6. Cincinnati argues that "all of the experts in this case for both plaintiff and defendants have determined that the catalytic converter in the wood stove had nothing to do with the cause of the fire." *Id.*

Wolverine filed a timely response to this motion on October 9, 2013. *See* Def.'s First Resp., ECF No. 32. Wolverine first explains that the woodstove involved in this case, a Vermont Castings Defiant Encore 2550, "has a **catalytic combustor**, not a catalytic converter."[1] *Id.* at 2

---

[1] For convenience's sake, the Court will refer to this component herein—whatever its official title—as a catalytic converter.

(emphasis in original). Beyond that technicality, Wolverine claims that "none of the experts actually made a determination that the combustor '…*had nothing to do with the fire*.'" *Id*. (emphasis in original). Wolverine argues as follows:

> [N]one of the experts even claim to have thought about the combustor. Despite having reviewed the 2550's owners' manual, all of the experts admit that they did not examine the combustor. Some of the experts admit that they do not know where it is, and one testified that he 'hates' catalytic combustors.

*Id*. at 3. Then, after weaving back and forth between citations and references unrelated to Cincinnati's motion,[2] Wolverine finally returns to the catalytic converter on page 11 of its response. Wolverine concludes with the assertion that the Kattermans had a duty to inspect the catalytic converter three times per year and a duty to replace the converter when necessary (about every two to six years). *Id*. at 11–12.

Wolverine then continues on to other irrelevant topics—discussing, for example, whether the stove and chimney had been recently cleaned or inspected. *See id*. at 14. Finally, Wolverine seemingly attacks every expert in the case, including its own:

> To the extent that the opinions upon which plaintiff's motion relies assume "normal operating conditions" as a constant relative to the heat source that is a fundamental aspect of said opinions, the testimony assumes facts not in evidence and (or) facts contradicted by evidence. That the catalytic combustor was not even considered much less inspected is merely one highly relevant example of why the proffered testimony is not based on sufficient facts or data, is not the product of a whole or reliable methodology, and (or) is not the result of a reliable application of actual principles to actual facts within the meaning of FRE 702. Moreover, and within the meaning of FRE 703, the basis for assuming "normal operating conditions" is not rooted in facts or data in the case that the experts have been made aware of or personally observed.

---

[2] For reasons that are unclear, Wolverine discusses whether the stove was under "normal operation conditions," Def.'s First Resp. 4, the type of fuel the Kattermans burned, *id*. at 7, whether the Kattermans operated the stove in accordance with the owners' manual, *id*. at 9, whether they used a damper device, *id*. at 10, and whether the stove was up to code, *id*. at 11.

*Id.* Finally, Wolverine requests not only that Cincinnati's motion in limine be denied (and that it be allowed to discuss the catalytic converter at trial), but that "this court enter its order prohibiting any opinion testimony that assumes 'normal operating conditions' as a constant." *Id.* at 15.

To begin, this Court's rules prohibit requesting specific relief from the Court as a part of a response to an opponent's motion. *See* Motion Practice Guidelines for Judge Thomas L. Ludington, Separate Motion and Brief, *available at* http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=360 ("Motions may not be included within or appended to a response or a reply."). Accordingly, the portion of Wolverine's response addressing expert-opinion testimony, and its request that opinion testimony be somehow limited, will be disregarded.

As to whether Wolverine and Becker should be foreclosed from mentioning the catalytic converter, not one expert in the case has linked that component with the fire. First, Ron Taylor—a retained expert for Wolverine—indicated that his opinion was "the cause of this fire is the result of a failure to maintain clearance to combustibles (typically 2" for most chimneys) with the mechanical flue pipe creating pyrolysis of the wood structural members, eventually resulting in open flame ignition." Pl.'s Second Mot. Ex. 1, at 2. Mr. Taylor makes no mention of a catalytic converter in his analysis.

Becker's expert, Eric Simons, also conducted a study to "determine the origin and cause" of the Kattermans' house fire. Pl.'s Second Mot. Ex. 2, at 1. Like Mr. Taylor, he indicated that "[t]he ignition source of the fire was heat from the normally operating chimney, igniting the cellulose insulation which was in contact with the pipe. The smoldering cellulose insulation

ignited the wood framing components of the structure and the fire spread throughout the attic." *Id.* at 3. His report makes no mention of the catalytic converter.

Two other individuals—Jerry Dahl and Clell Atchley—examined the fire and are listed as possible defense witnesses. In his report, Mr. Dahl indicated that "the minimum air space clearance of 2" from the insulated chimney parts was not executed in the installation of the flue pipe through the attic area. This installation defect caused localized overheating and resulted in ignition of nearest combustible materials." Pl.'s Second Mot. Ex. 3, at 3. Mr. Atchley explained as follows:

> The chimney system, did not meet the manufacturers requirements for clearance to combustible protection. The system (chimney and stove) height did not meet the wood stove manufacturers recommended minimum system height. The chimney did not meet the minimum height requirement as required by the code in effect at the time of installation. The termination cap did not have adequate spark protection.

Pl.'s Second Mot. Ex. 4, at 2. Like Mr. Taylor and Mr. Simons, neither Mr. Dahl nor Mr. Atchley attributed the cause of the fire to the catalytic converter, or even made mention of it in their reports.

Wolverine is correct when it indicates that "none of the experts even claim to have thought about the combustor." Def.'s First Resp. 3. It is clear from their reports, discussed above, that not one of the experts concluded the catalytic converter had anything to do with the fire; otherwise, they certainly would have mentioned it. That being the case, whether the Kattermans replaced or inspected the component is entirely irrelevant; not a single expert concluded that it was a cause of the fire. Its mention at trial will only confuse the jury. Cincinnati's motion will be granted.

At trial, Becker and Wolverine will be foreclosed from mentioning or making reference to the catalytic converter (or combustor) that was a part of the Kattermans' woodstove.

**C**

With its third motion in limine, Cincinnati seeks to preclude "defendants, their witnesses, and their counsel from making any mention of or reference to shortening of the chimney pipe." Pl.'s Third Mot. 2, ECF No. 27. Here, Cincinnati claims that Becker and Wolverine "have made references and allegations throughout the litigation of this matter that plaintiff's insured, Hal Katterman, shortened the chimney pipe, which caused the fire." *Id*. at 6. Cincinnati emphasizes "Mr. Katterman['s] . . . testimony that he did not make any modifications to the chimney pipe on the roof, he did not remove any sections of the pipe, and he did not shorten the stack," and it argues that "Defendants have not produced any evidence that the chimney pipe was modified or shortened in any way." *Id*.

Wolverine chose not to respond to this motion until October 28, 2013. Becker did not respond at all. Thus, the motion will be granted. *See Barner*, 399 F.3d at 749. At trial, Becker and Wolverine may not make reference to shortening of the chimney pipe.

**D**

Cincinnati's fourth motion in limine seeks to "preclude defendants, their witnesses, and their counsel from referring to the fire at the Katterman property as a chimney fire." Pl.'s Third Mot. 2, ECF No. 28. Cincinnati points out that Becker and Wolverine "have made references during the litigation of this matter that the subject fire may have been the result of a chimney fire." *Id*. at 6. They argue, however, that "[a]ll of the experts identified by plaintiff and both defendants have prepared reports and provided testimony that the fire and resulting damages in this case were *not* caused by a chimney fire." *Id*. (emphasis in original).

Wolverine filed a delinquent response to this motion as well. The response will be stricken from the docket, and the motion in limine will be granted. *See Barner*, 399 F.3d at 749. At trial, Becker and Wolverine will be foreclosed from referring to the fire as a "chimney fire."

**E**

In its fifth motion in limine, Cincinnati seeks to "exclude any mention of or reference to pre- or post fire insurance claims made by or on behalf of Hal and/or Jacquie Katterman." Pl.'s Fifth Mot. 2, ECF No. 29. Cincinnati notes that "Defendants are seeking evidence of all insurance claims filed by Hal or Jacquie Katterman before and after the fire that is the subject of this litigation," *id*. at 6, but argues that information is irrelevant. Specifically, Cincinnati indicates that evidence of other insurance claims filed by the Kattermans "is highly prejudicial and would serve to confuse and mislead the jury" because the evidence "does not tend to prove or disprove any material fact in this case and has no bearing whatsoever on either of defendants' liability." *Id*. at 6–7.

As with its previous timely response, Wolverine's second response does not stay with the issue at hand. The first few pages of the attached brief do not even mention additional insurance claims made by the Kattermans.

When Wolverine finally does reach the issue, it indicates, "And so we see that during the same year as the subject fire, plaintiff's subrogors had a different fire that Hal says was caused by arson. . . . The defense should be permitted to evaluate the circumstances for itself." Def.'s Second Resp. 9, ECF No. 32. Wolverine goes on to request not only that Cincinnati's motion be denied, but that "plaintiff and its subrogors be required to produce the file materials asked for in July; and, if appropriate, that the defendants be permitted to continue their deposition of Michael Jenkinson." *Id*. at 11.

To be clear: this case is set for trial in three weeks. At the request of the parties, the deadline for motions challenging experts or seeking dispositive relief was previously extended to August 30, 2013. Despite this extension, neither party filed any related motions. Wolverine's current requests—that Cincinnati be forced to produce materials and that the Court allow continued depositions—are both untimely and barred by this Court's own practices (no motions may be included in a responsive brief). The requests will be not be granted.

At trial, Becker and Wolverine may not reference or mention any pre- or post-fire insurance claims.

### F

Cincinnati's final motion in limine seeks to "limit the testimony of Ronald Taylor, defendant Wolverine Insulation, LLC's expert, to the cause of the fire and to bar Ronald Taylor from any mention of or reference to the design or construction of the Katterman's [sic] property that is the subject of this litigation." Pl.'s Sixth Mot. 2, ECF No. 30. Cincinnati indicates that "[d]uring his deposition taken September 18, 2013, Mr. Taylor testified for the first time that, at trial, he would like to offer opinions on the design and construction of the attic space, the roof and the OSB box." *Id.* at 6. Believing such testimony is improper, Cincinnati seeks to "limit Mr. Taylor's testimony to the opinions set forth in his expert report." *Id.*

Wolverine also filed an untimely response to this motion in limine on October 24, 2010. Again, this is not permitted by Local Rule 7.1. The untimely response will be stricken, and Cincinnati's motion will be granted.

At trial, Ronald Taylor's testimony will be limited to the cause of the fire and any other opinions he was expressed in his expert report.

### III

Accordingly, it is **ORDERED** that Wolverine's untimely responses, ECF Nos. 36, 37, 43, and 44, are **STRICKEN**.

It is further **ORDERED** that each of Cincinnati's motions in limine, ECF Nos. 25, 26, 27, 28, 29, and 30, is **GRANTED**.

Dated: October 28, 2013    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 28, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS